No. 44,197

Fred V. Dole, *Appellee,* v. W. B. Phipps, Jr., and Elvira M. Phipps, his wife, *Appellants.*

(407 P. 2d 556)

Opinion filed November 6, 1965.

*Lyndon Gamelson* and *Harry E. Robbins, Jr.,* both of Wichita, argued the cause, and *Donald C. Tinker, Jr.,* also of Wichita, was with them on the brief for the appellants.

*Everett C. Fettis,* of Wichita, argued the cause and *Robert C. Allan,* of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

Price, J.: This was an action by a landlord against his tenants to recover possession of real property on account of alleged failure to pay rent.

The landlord will be referred to as plaintiff and the tenants as defendants.

Defendants have appealed from an adverse judgment.

The facts are not in dispute.

For a number of years prior to 1962 defendants, as lessees, had been in possession of three adjoining lots of real estate in Wichita covered by separate long-term written leases. Plaintiff was the lessor therein. Defendants had made valuable improvements on the property. The monthly rental of the three leases totaled $147.50. Prior to August 1962 defendants always paid their monthly rent covering the three leases by one check in the above amount and it always had been accepted by plaintiff.

On July 2, 1962, defendants purchased from the Shriner's Hospital a fourth lease covering a small lot of real estate adjoining the property covered by the other three leases. Plaintiff also was the lessor in this fourth lease. A typewriter shop was located on the property covered by the fourth lease prior to and during the Shriner's

ownership and remained so after defendants purchased the lease. Defendants went into possession of the property covered by this lease. Under its terms the monthly rental was $30.00. Plaintiff was notified that defendants had purchased the fourth lease and, on July 12, 1962, through his attorney, wrote the following letter to defendants:

"Please be advised we represent Fred Dole. He has just received notice from the bank that your company, Kamar, Inc., has purchased the leasehold interest from the Shriner's Hospitals, 1707 S. Hillside. For your information, there had been negotiations with Mrs. Vanderveen before her death and representatives of the Shriner's Hospitals since her death respecting cancellation or re-negotiation of the lease for the reason that the typewriter shop located therein is in violation of the lease.

"I am instructed by Mr. Dole to advise you he intends to enforce the terms of the lease completely as to use made of the property. Therefore I would suggest you apprise yourself of the terms of the lease. Please confer with me or Mr. Dole, otherwise action will be taken."

On July 30, 1962, defendants sent to plaintiff one check in the amount of $177.50, as the August rental due on all *four* leases.

The check was refused by plaintiff and on August 10, 1962, was returned to defendants with the following letter:

"I am returning herewith your check dated 7/30/62 in amount of $177.50, which has been tendered by you in payment of August rent covering your leases known as the liquor store and used car lot properties.

"The amount of this check is incorrect and I respectfully request that you mail a new check in the correct amount of $147.50 by return mail."

Similar tenders of rent were made by defendants for the months of September and October, 1962, and ever since then defendants have regularly tendered rental payments the first of each month. After litigation was commenced the payments were paid into court each month.

Other than the letter of July 12, 1962, above, no demand was ever made by plaintiff on defendants with respect to the *fourth* lease and no action was ever commenced by him to cancel that lease.

On September 10, 1962, plaintiff gave a ten-day notice to defendants for cancellation of the *first three leases*, giving as reason therefor non-payment of rent. This notice was given pursuant to G. S. 1949, 67-507 (now appearing as K. S. A. 58-2507), which reads:

"If a tenant for a period of three months or longer neglect or refuse to pay rent when due, ten days' notice in writing to quit shall determine the lease, unless such rent be paid before the expiration of said ten days."

Shortly thereafter plaintiff commenced this action for possession of the property covered by the *first three leases*. Defendants denied they had failed to pay the rent due under those leases and alleged they had tendered it each month but that plaintiff had refused to accept it.

The matter was heard on stipulations of fact as substantially related above, and at the conclusion of the hearing the court, on February 24, 1964, notified counsel for the parties as follows:

"Plaintiff has shown no reason in law to declare the fourth lease invalid as between him and defendants; therefore, his refusal to accept the rent money has not been legally justified. Judgment must be rendered for the defendants."

Plaintiff filed a motion for a new trial and a motion for the court to alter and reverse its judgment. Following a hearing, the court, on April 27, 1964, reversed its former ruling and advised counsel for the parties as follows:

"This case was submitted upon stipulations. My original error consisted in not having thoroughly examined the stipulations and exhibits in the first instance.

"The tenants were at fault. They could have saved the three leases by having separated their checks or by offering payment upon receiving notice to vacate. They are in default, and plaintiff's motion to reverse judgment in his favor must be sustained. The motion for a new trial is overruled."

Defendants' motion for a new trial was overruled and they have appealed.

At this point mention should be made of another law suit involving the validity and terms of only the *fourth* lease. In March 1963 (and while the instant case was pending) Shriner's Hospital, which was defendants' assignor of the fourth lease, brought an action in the district court of Sedgwick county against Mr. Dole (plaintiff in the instant case) to quiet title to the premises covered by that lease. In that action, which was tried in another division of the district court, judgment was rendered to the effect that Mr. Dole's only interest in the lease was to receive the monthly rental and he was barred from disturbing the peaceful possession of Shriner's Hospital and its assignees. The judgment in that case was rendered subsequent to the judgment in the instant action concerning the first three leases.

The "picture" of just what happened here comes into clear focus.

For a number of years defendants, as tenant-lessees, had paid the monthly rent of $147.50 covering the three leases here in question, to plaintiff landlord-lessor by one check. It always had been ac-

cepted by him without question. Defendants later became the tenant-lessees under a fourth lease in which plaintiff also was the landlord-lessor. The monthly rent under this lease was $30.00 and so defendants sent their check for $177.50 to plaintiff as rent on all four leases. Plaintiff questioned the use being made of the property covered by the fourth lease and refuse to accept the check, telling defendants to send him a check of $147.50 which would be the proper amount for the other three leases. Apparently the parties "locked horns"—for defendants continued to send their monthly check for $177.50 and plaintiff, instead of cashing it and returning $30.00 to them—refused to accept the checks. He later brought this action for possession of the property covered by the first three leases because of non-payment of rent. The only question, therefore, is whether, under the undisputed facts, defendants were in default of rent on the *first three leases.*

In support of the trial court's judgment that defendants were in default of rent on the three leases in question, plaintiff contends that the tender of payment by defendants was at all times "conditional," and that had he accepted the monthly checks in the amount of $177.50, which included rental on the fourth lease—he thereby would have waived any right to assert any further claim or cause of action against defendants with respect to that lease.

Defendants, on the other hand, contend that the only purpose of the statute, above quoted, is to secure the payment of rent, and, absent such payment, to place the landlord in possession of the premises; that the amount tendered by them each month equaled the whole amount due under the leases covering the property occupied by them; that the position taken by plaintiff as to the fourth lease was merely an attempt on his part to bring about an unjust result with respect to the first three leases, and that in no respect can their repeated monthly tenders of rent be considered as "conditional."

Although counsel for both parties cite a number of authorities on the general subject of "tender," none of them is applicable to the unusual circumstances of the situation presented. We are concerned here only with the question whether defendants were in default of rent on the first three leases. The other law suit in which it was ultimately determined that plaintiffs contention with respect to the fourth lease was erroneous is indirectly involved only to the extent that it throws some light on the entire course of dealing of

the parties. The question might well be asked—where a landlord refused tender, based on a claim as to one of four leases which was subsequently determined against him, may it be said that he can assert a forfeiture of the *other three leases* on the basis of nonpayment of rent, where the amount tendered for the three leases is conceded to have been correct?

The equities of the case, and considerations of every-day common justice compel a negative answer to the question. Throughout the entire period defendants "paid their rent" under the *first three leases.* They were at no time in default and we believe the trial court erred in concluding otherwise.

The judgment is therefore reversed.

FATZER, J., dissents.